UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO,
ANTHONY PIROZZI, DOMINICK MARROCCO,
ANTHONY D'AQUILA, FRANK FINKEL,          REPORT AND
JOSEPH FERRARA, SR., MARC HERBST,          RECOMMENDATION
THOMAS PIALI and DENISE RICHARDSON,
as Trustees and Fiduciaries of the Local 282       09 CV 565 (SLT)(RML)
Welfare, Pension, Annuity, Job Training, and
Vacation and Sick Leave Trust Funds,

            Plaintiffs,

   -against-

ANDREWS TRUCKING CORP.,

            Defendant.
-----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

      By order dated December 16, 2009, the Honorable Sandra L. Townes, United States District Judge, referred plaintiffs' motion for entry of a default judgment to me to conduct an inquest on damages and issue a Report and Recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion for a default judgment be granted and that plaintiffs be awarded $1,846,973, plus interest.

## BACKGROUND AND FACTS

      Plaintiffs Thomas Gesualdi, Louis Bisignano, Anthony Pirozzi, Dominick Marrocco, Anthony D'Aquila, Frank Finkel, Jospeh Ferrara, Sr., Marc Herbst, Thomas Piali, and Denise Richardson, as trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (collectively, the "Funds"), brought this action in February 2009 under § 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. According to the complaint, each of the Funds is a multi-

employer employee benefit trust fund, organized and operated in accordance with ERISA. (Compaint, dated Feb. 6, 2009 ("Compl."), ¶ 4.) The Funds provide benefits to the members of Local 282 of the International Brotherhood of Teamsters, AFL-CIO ("Local 282") and maintain their principal place of business in Lake Success, New York. (Compl. ¶¶ 4, 5.)

Defendant Andrews Trucking Corp. is a corporation registered to do business in New York, with its principal place of business in Staten Island, New York. (Compl. ¶ 7.) Defendant is a party to and is bound by a series of collective bargaining agreements between Local 282 and various employers (the "CBAs"), as well as the Restated Agreement and Declaration of Trust of the Local 282 Funds (the "Trust Agreement"). (Compl. ¶¶ 9, 10; see also Declaration of Theresa Cody, sworn to June 15, 2009 ("Cody Decl."), ¶ 5; Declaration of William M. Maye, sworn to June 11, 2009 ("Maye Decl."), ¶ 3, Ex. A.) As explained in more detail below, plaintiffs allege that defendant failed to submit remittance reports and pay all required contributions on behalf of its employees who performed work covered by the CBAs, reported certain employee hours inaccurately, and permanently ceased all contributions to the Pension Fund in October 2007. (Compl. ¶¶ 26, 34-40, 48-62.)

Plaintiffs have demonstrated that defendant was properly served with the Summons and Complaint. (Affidavit of Service of J.R. O'Rourke, sworn to Apr. 8, 2009, annexed as Ex. B to the Declaration of Nathan V. Bishop, Esq., dated July 6, 2009 ("Bishop Decl.").) In addition, a Clerk's Certificate confirms that defendant has not filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired. (Clerk's Certificate of Default, dated July 14, 2009.) I therefore respectfully recommend that plaintiffs' motion for a default judgment be granted.

**DISCUSSION**

It is well settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). "While the default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." LaBarbera v. Golden Vale Constr. Group, No. 06 CV 813, 2007 WL 2071565, at *3 (E.D.N.Y. July 17, 2007) (quoting Levesque v. Kelly Commc'ns, Inc., No. 91 Civ. 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993)) (citation omitted). Plaintiffs' allegations fall into three categories, which I will address in turn.

A. Delinquent Contributions

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." Masino v. A to E, Inc., No. 07 CV 3462, 2009 WL 5184340, at *2 (E.D.N.Y. Dec. 21, 2009) (quotation marks and citations omitted). Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of -
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan
>     in an amount not in excess of 20 percent . . . of the
>     amount determined by the court under subparagraph
>     (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by
> the defendant, and

(E) such other legal or equitable relief as the court deems appropriate. Section 1332(g) thus creates a mandatory right to interest, liquidated damages, and attorney's fees "in any case in which a judgment in favor of the plan is awarded." Masino v. A to E, Inc., 2009 WL 5184340, at *2 (quotation marks and citations omitted).

As explained, defendant was a signatory to certain agreements that obligated it to submit monthly remittance reports and contributions to the Funds. (See Cody Decl. ¶¶ 1–3, Exs. A, B.) The remittance reports state the number of hours worked by each employee in covered employment and the amount to be paid into the Funds. (See Bishop Decl. ¶ 16.) Defendant submitted remittance reports to the Funds for the period up to and including October 14, 2007, but it has failed to submit any remittance reports since then, and it has not made any contributions since November 1, 2007. (Cody Decl. ¶ 6, Ex. C.) It also has failed to supply books and records to the Funds' auditors, as required under Article IX(1)(d) of the Trust Agreement, since October 1, 2007. (Compl. ¶ 37; Cody Decl. ¶ 10; Declaration of Richard Bamberg, sworn to June 17, 2009 ("Bamberg Decl."), ¶ 10.)

In August 2008, the Funds' auditors conducted three audits of defendant that form the basis of this action. In the first, Audit #08-0337, the auditors reviewed defendant's books and records for the period of March 24 through June 30, 2006 and concluded that defendant owes $19,899 in unpaid contributions for that period. (Compl. ¶ 35; Bamberg Decl. ¶ 8, Ex. A.) In the second, Audit #08-0338, the auditors reviewed defendant's books and records for the period of July 1, 2006 through September 30, 2007 and concluded that defendant owes $123,727.13 for that period. (Compl. ¶ 36; Bamberg Decl. ¶ 9, Ex. B.) The third, Audit #09-0144-E, covered the period of October 1, 2007 to February 29, 2008. Because defendant

submitted remittance reports only up to October 14, 2007, and failed to supply books and records for the entire period, the auditors applied the formula set out in the Trust Agreement for calculating delinquent contributions. (Bamberg Decl. ¶¶ 10-12.)

The Trust Agreement provides that where an employer submits a monthly remittance report but fails to supply the pertinent books and records required for an audit within twenty days of a written demand, the trustees may calculate the employer's delinquent contributions for that month by taking fifty percent of the hours reported by the employer in its remittance report and multiplying that number by the contribution rates in the collective bargaining agreement. (Compl. ¶ 18; Cody Decl. ¶ 12; Maye Decl., Ex. A, Art. IX(1)(f).) The auditors applied this formula to calculate defendant's delinquent contributions for October 2007. (Bamberg Decl. ¶ 11.) Where an employer fails to submit monthly remittance reports as required, the Trust Agreement authorizes the trustees to calculate that employer's delinquent contributions for each month by adding ten percent to the hours for the month in which the employer reported the largest number of hours in the previous twelve reports. (Compl. ¶ 19; Cody Decl. ¶ 11; Maye Decl., Ex. A, Art. IX(1)(f).) That month is referred to as the "base month." (Compl. ¶ 19.) The auditors applied this formula to calculate defendant's delinquent contributions for November 1, 2007 through February 29, 2008. (Bamberg Decl. ¶ 13, Ex. C.) They concluded that defendant owes $631,664.75 in unpaid contributions for that period. (Bamberg Decl. ¶ 13, Ex. C.)

I have reviewed the auditors' reports and calculations and find them accurate. I therefore respectfully recommend that plaintiffs be awarded $775,290.88 in delinquent contributions.

In accordance with Article IX, § 3 of the Trust Agreement, and pursuant to 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to interest on the delinquent contributions at the rate of eighteen percent per annum from the date the contributions were due to the date of payment. (See Maye Decl., Ex. A, Art. IX, § (3)(a), as amended Oct. 28, 2003.) Interest relating to Audit #08-0337 equals $16,210.74 through May 31, 2009 and continues to accrue at the rate of $14.88 per day from June 1, 2009 through the date of entry of judgment. (See Bamberg Decl. ¶ 15, Ex. A.) Interest relating to Audit #08-0338 equals $55,947.24 through May 31, 2009 and continues to accrue at the rate of $70.44 per day from June 1, 2009 through the date of entry of judgment. (See Bamberg Decl. ¶ 15, Ex. B.) Interest relating to Audit #09-144-E equals $156,785.73 through May 31, 2009 and continues to accrue at the rate of $311.51 per day from June 1, 2009 through the date of entry of judgment. (Bamberg Decl. ¶ 15, Ex. C.) In sum, I respectfully recommend that plaintiffs be awarded interest on the delinquent contributions totaling $228,943.71, plus an additional $396.83 per day from June 1, 2009 to the date of entry of judgment.

Pursuant to Article IX, § (3)(d) of the Trust Agreement and 29 U.S.C. § 1132(g)(2)(C), plaintiffs are also entitled to liquidated damages in an amount equal to either twenty percent of the delinquent contributions or the interest on the delinquent contributions. (See Maye Decl, Ex. A., Art. IX, § (3)(d).) Plaintiffs have elected to recover additional interest. (Bishop Decl. ¶ 27.) I therefore recommend that plaintiffs be awarded an additional $228,943.71, plus an amount equal to $396.83 per day from June 1, 2009 to the date of entry of judgment.

B. Unearned Benefits

In Audit #08-0338, the Funds' auditors discovered three instances in which defendant reported employee hours inaccurately, causing the Welfare Fund to provide benefits that were unearned. (See Compl. ¶¶ 48–62; Declaration of Ellyn Stewart, sworn to June 25, 2009 ("Stewart Decl.").) According to the Funds' records, defendant reported forty-eight hours worked by employee Vincent Toianeiello, sixteen hours worked by employee Frank Montanino II, and forty-eight hours worked by employee Stuart Meyerson, all of which defendant reported inaccurately as having been worked in covered employment. (Stewart Decl. ¶¶ 2–4.) As a result, the Welfare Fund provided a total of $1,443.53 in benefits to employees who were not eligible to receive those benefits. (Bishop Decl. ¶ 30.) By letters dated September 23, 2008, the Welfare Fund demanded that defendant repay the Welfare Fund for those unearned benefits (see Stewart Decl., Exs. A–C), but to date defendant has not done so. (Stewart Decl. ¶ 4.)

In Audits # 08-0337 and #08-0338, the auditors also discovered that defendant had reported hours inaccurately for employee Mike Catanese, causing the Annuity Fund to provide $53.97 and the Vacation and Sick Leave Fund to provide $72.00 in earned benefits to that employee. (Declaration of Martha Bolanos, sworn to June 25, 2009 ("Bolanos Decl."), ¶¶ 2–3.) By letters dated September 24, 2008, those Funds demanded that defendant repay them for the unearned benefits (Bolanos Decl., Exs. A, B), but to date defendant has not done so. (Bolanos Decl. ¶¶ 2, 3.)

I have reviewed plaintiffs' documentation and find it accurate. I therefore recommend that plaintiffs be awarded $1,569.50 in benefits paid by the Welfare, Annuity, and Vacation and Sick Leave Trust Funds due to defendant's overreporting of its employees' hours in covered employment.

C.  Pension Fund Withdrawal Liability

In or about October 2007, defendant permanently ceased all contributions to the Pension Fund.  (Compl. ¶ 26; Maye Decl. ¶ 4.)  Under ERISA § 4203(a), that permanent cessation of contributions constituted a "complete withdrawal" from the Pension Fund.  See 29 U.S.C. § 1383(a)(2).  Defendant therefore became obligated to pay withdrawal liability to the Pension Fund for its proportionate share of the Pension Fund's unfunded vested benefits.  See 29 U.S.C. §§ 1381, 1391.

The Pension Fund calculated defendant's withdrawal liability as $576,718.18.  (Maye Decl. ¶ 5.)  By letter dated May 6, 2008, the Pension Fund demanded payment of defendant's withdrawal liability and advised defendant that it could amortize its liability in twenty-two consecutive monthly installments of $27,204.38, starting June 1, 2008, plus a final payment of $567.49.  (Maye Decl., Ex. B.)  By letter dated July 16, 2008, the Pension Fund again notified defendant of its delinquency and demanded payment.  (Maye Decl., Ex. C.)  To date, defendant has neither made any payments nor challenged the Pension Fund's withdrawal liability assessment.  (Maye Decl. ¶¶ 5-7.)  Since the entire balance remains unpaid, and defendant has taken no steps to cure its default, defendant is liable for the entire withdrawal liability of $576,718.18.

In addition, the Pension Fund is entitled to interest on the withdrawal liability payments from June 1, 2008 to the date of entry of judgment.  See 29 U.S.C. §§ 1132(g)(2)(B), 1451(b); 29 C.F.R. § 419.32.  Article XI, § 5(d)(2) of the Trust Agreement provides that:

> Interest shall be charged on any amount in default from the date payment was due to the date it is paid at an annual rate equal to the prime rate charged by the Bank of New York on the first day of the calendar quarter preceding the due date of the payment. . . . For

> each succeeding 12-month period that any amount in default
> remains unpaid, interest shall be charged on the unpaid balance . . .
> at the prime rate in effect on the anniversary date of the date as of
> which the initial interest rate was determined.

(Maye Decl. ¶ 9, Ex. A.) Plaintiffs calculate the interest through June 10, 2009 as $21,283.11, with additional interest accruing at the rate of $79.50 per day. (Maye Decl. ¶ 9.) I have reviewed that calculation and find it accurate.

The Pension Fund is also entitled to liquidated damages equal to twenty percent of the unpaid amount due and owing or the amount of interest owed. See 29 U.S.C. §§ 1132(g)(2), 1451(b). (See also Maye Decl., Ex A, Art. XI, § 5(e).) Twenty percent of $576,718.18 is $115,343.64.

In sum, I respectfully recommend that the Pension Fund be awarded $576,718.18, plus liquidated damages of $115,343.64 and interest of $21,283.11, for a total of $713,344.93, with additional interest to accrue at the rate of $79.50 per day from June 11, 2009 to the date of entry of judgment.

        D.  Attorney's Fees

Pursuant to § 502(g)(2)(D) of ERISA and Article IX, § 3 of the Trust Agreement, plaintiffs seek to recover $20,553.10 in attorney's fees relating to the claim for delinquent contributions and $5,991.50 in attorney's fees on behalf of the Pension Fund concerning the claim for withdrawal liability. (See Bishop Decl. ¶¶ 35, 36; Maye Decl., Ex. A, Art. IX, § 3(a).) Plaintiffs support their fee request with contemporaneous time records. (See Bishop Decl., Ex. C.) "The determination of a reasonable fee award under Section 1332(g)(2)(D) of ERISA lies within the sound discretion of the district judge." DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1043 (E.D.N.Y. 1993) (citation omitted); see also Cruz v. Local Union No. 3 of the

IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994). In calculating a "presumptively reasonable" fee award, the court must first establish a reasonable hourly rate, which is "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008). Reasonable hourly rates are determined by reference to, inter alia, fees in the community in which the action is pending and to the skill and experience of the attorneys who worked on the matter. See, e.g., Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997). See generally Arbor Hill, 522 F.3d at 184. The party seeking fees then bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. See Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

Here, plaintiffs' counsel, Friedman & Wolf, charged rates of $445, $390, and $280 per hour, based on each attorney's years of experience. (Bishop Decl. ¶ 34.) For attorney's fees incurred after February 1, 2009, the firm applied a ten percent discount. (Bishop Decl. ¶¶ 35, 36.) Although plaintiff's counsel's office is in nearby Manhattan, this court is required to look to the hourly rates that are commonly charged for comparable work in the Eastern District of New York, which tend to be lower than rates charged in the Southern District. See Simmons v. New York City Transit Auth., 575 F.3d 170 (2d Cir. 2009) ("when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule," which generally requires courts to use the hourly rates employed in the district in which the court sits); Green v. City of New York, No. 05 CV 429, 2009 WL 3063059, at *9 (E.D.N.Y. Sept. 21, 2009) (noting that hourly rates in the Southern District of New York "have increased in the past decade and are now higher than the rates in this

District"). Under the framework established in Simmons, this court must presume that Eastern District rates apply to this case unless counsel can overcome the presumption. To overcome that presumption,

> a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise.
>
> * * *
>
> The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. . . . Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case . . . or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

Simmons, 575 F.3d at 175-76. Here, plaintiff's counsel has made no effort to overcome the presumption, and I therefore recommend that counsel be compensated at lower hourly rates. Specifically, I recommend that the hourly rates for partners Eugene S. Friedman, Michael Bauman, and Erinn Weeks Waldner be reduced to $350. I find partner Nathan Bishop's hourly rate of $280 reasonable. See, e.g., Finkel v. Rico Elec., Inc., No. 07 CV 2145, 2009 WL 3367057, at *7 (E.D.N.Y. Oct. 16, 2009) (approving rates of $225 to $250 per hour for three partners who had been practicing labor law for twenty to thirty years); Moran v. Sasso, No. 05 CV 4716, 2009 WL 1940785, at *5 (E.D.N.Y. July 2, 2009) (awarding $225 per hour for law firm partner with twenty years of experience in labor and employee benefits litigation, $190 per

-11-

hour for partner with thirteen years of experience in labor and employee benefits law, and $175 per hour for associate with nineteen years of experience practicing labor and employment law); Hyeon Soon Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) ("[H]ourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.").

As for the number of hours expended, courts uphold fee requests in ERISA cases when they determine that such fees are reasonable. See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006). "The number of hours spent on litigation and the staffing pattern utilized is unreasonable if it is excessive, redundant or otherwise unnecessary." Bourgal v. Atlas Transit Mix Corp., No. 93 CV 569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996) (citation omitted). Plaintiffs' attorneys expended a total of 61 hours on the claim for delinquent contributions and 22.7 hours on the claim for withdrawal liability, for a total of 83.7 hours. (See Bishop Decl. ¶¶ 35, 36, Ex. C.) Counsel's work on this case included drafting and revising the complaint, corresponding with the auditors and Fund employees, preparing default judgment submissions, and drafting a brief status report for the court. (Bishop Decl., Ex. C.) I find the number of hours spent excessive.[1] In a straightforward ERISA default judgment case, counsel typically expends no more than twenty-five total hours. Cf. Masino v. Tucci Equip. Rental Corp., No. 08 CV 898, slip op. at 7 n.2

---

[1] In fact, plaintiff's counsel appears to have billed for time spent on issues unrelated to this default judgment. (See Bishop Decl., Ex. C (noting significant time spent pursuing a criminal investigation with the U.S. Attorney's Office, as well as research and analysis concerning companies other than Andrews Trucking).)

(E.D.N.Y. Oct. 8, 2008) (noting that the 25.1 hours billed would normally be excessive for a firm with an extensive ERISA practice, but that the case was exceptional because plaintiffs' counsel had expended considerable time attempting to negotiate a settlement); LaBarbera v. Cent. Design Sys., Inc., No. 06 CV 2709, 2006 WL 3422645, at *4 (E.D.N.Y. Nov. 28, 2006) (concluding that 24.95 hours was reasonable in ERISA default judgment case); LaBarbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (17.17 hours reasonable). Since this case is somewhat more complex than most ERISA default cases, I recommend that plaintiffs be compensated for 35 hours of Mr. Bishop's time, plus ten hours for the other firm partners collectively. Accordingly, I respectfully recommend a total fee award of $13,300.

Plaintiffs also seek costs in the amount of $924. (See Bishop Decl. ¶ 38, Ex. D.) A court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (quotation marks and citation omitted); accord 29 U.S.C. § 1132(g)(2)(D). "A prevailing party may be reimbursed for the expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." New York State Ass'n of Realtors v. Shaffer, 898 F. Supp. 128, 134 (E.D.N.Y. 1995) (quotation marks and citation omitted). Here, the costs are filing fees and a fee for service of process, and I find the amount reasonable. I therefore respectfully recommend that plaintiffs be awarded $924 in costs.

E. Audit Fees

Finally, plaintiffs seek audit fees of $13,382.50. (See Bamberg Decl. ¶ 16.) ERISA and the CBA authorize plaintiffs to recover their audit costs. See King v. JCS Enters., 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004) (finding that 29 U.S.C. § 1132(g)(2)(E) allows recovery of audit fees). (See also Maye Decl, Ex. A, Art. IX, § 3(b).) Like requests for attorney's fees, such requests must have the support of "records . . . sufficient to allow the court to determine the reasonableness of the audit costs." Morin v. Nu-Way Plastering Inc., No. 03 CV 405, 2005 WL 3470371, at *4 (E.D.N.Y. Dec. 19, 2005) (citing King, 325 F. Supp. 2d at 173-74). Plaintiffs have failed to provide any supporting documentation, and as a result, this court cannot evaluate the request. Accordingly, I recommend that the audit fee request be denied with leave to submit appropriate documentation within thirty (30) days.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs receive (a) $775,290.88 in unpaid principal contributions; (b) $457,887.42 in interest and liquidated damages on the unpaid contributions; (c) additional interest and liquidated damages in the amount of $793.66 per day from June 1, 2009 to the date of entry of judgment; (d) withdrawal liability of $576,718.18; (e) interest on the withdrawal liability of $21,283.11, with additional interest accruing at the rate of $79.50 per day from June 1, 2008 to the date of entry of judgment; (f) $115,343.64 in liquidated damages on the withdrawal liability; (g) $1,569.50 in unearned benefits; (h) $13,300 in legal fees; and (i) $924 in costs. In total, I recommend an award to plaintiffs of $1,846,973, plus interest of 873.16 per day from June 1, 2009 to the date of entry of judgment. I further recommend that plaintiffs' request for audit fees be denied, with leave to

submit supporting documentation within thirty (30) days.

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Townes and to my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

    Respectfully submitted,

    _____/s/_____
    ROBERT M. LEVY
    United States Magistrate Judge

Dated: Brooklyn, New York
       March 22, 2010